LANDRY, Appellee,

v.

LANDRY, Appellant.

[Cite as *Landry v. Landry* (1995), 105 Ohio App.3d 289.]

Court of Appeals of Ohio,
Third District, Auglaize County.

No. 2-95-2.

Decided Aug. 3, 1995.

*Andrew Balyeat,* for appellee.

*Sheila E. Minnich,* for appellant.

---

EVANS, Judge.

Defendant-appellant, Joseph R. Landry, appeals from an order of the Court of Common Pleas of Auglaize County granting a divorce between the appellant and the plaintiff-appellee, Patricia L. Landry, and dividing the parties' property. For the reasons that follow, the judgment of the trial court is affirmed in part and reversed in part.

### I

The parties to this appeal were married in 1986. One child was born as issue of the marriage. The parties separated on July 31, 1993. The appellant filed for divorce on September 9, 1993. The appellee counterclaimed, and hearings were conducted before a referee on March 31, 1994, and April 12, 1994. On August 1, 1994, the referee issued her report and recommendations. The appellant timely objected to the referee's report, disputing certain aspects of the property division. The trial court overruled these objections and entered a final decree of divorce on December 23, 1994.

From that final order the appellant brings this appeal.

## II

The appellant asserts two assignments of error for our review:

### "ASSIGNMENT OF ERROR NO. 1"

"The trial court abused its discretion and erred as a matter of law in determining that the funds held in the Society Bank savings accounts [*sic*], being acct. no. 084–791–8638, in the amount of $41,489.00 are marital property and subject to division between the parties, as said funds contained in the account are clearly separate property belonging to the defendant."

### "ASSIGNMENT OF ERROR NO. 2"

"The trial court erred in its determination that the marital equity in the parties' real estate premises located at 832 Helen Drive, Wapakoneta, Ohio, was $13,937.00 as opposed to $9,975.19."

The appellant's first assignment of error challenges the trial court's determination that the funds contained in a Society Bank savings account were subject to division as marital property. The referee recognized that the Society account funds were derived from the appellant's premarital holdings in a Schwab stock portfolio account. The referee concluded, however, that this separate asset had been transmuted into a marital asset.

In dividing property in a divorce proceeding, R.C. 3105.171(B) and (D) require the trial court to classify assets as marital or nonmarital and then award each spouse his or her own separate, nonmarital property. R.C. 3105.171(A)(6)(b) provides that "the commingling of separate property with other property does not destroy the identity of the separate property as separate property, except when the separate property is not traceable."

A decision of the trial court in dividing marital property will not be disturbed on appeal absent an abuse of discretion. *Martin v. Martin* (1985), 18 Ohio St.3d 292, 294, 18 OBR 342, 343–344, 480 N.E.2d 1112, 1113–1114. An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142.

In this case, the referee found that the funds in the Society account constituted marital property. We have thoroughly reviewed the record, and do not find that the trial court abused its discretion. The testimony of the parties indicates that they treated the account in question as a joint account, as monies earned by the wife were deposited into the account during the course of the marriage in order to preserve the account while the husband was unemployed. The parties also deposited joint tax refunds into the Society account. Additional

testimony elicited during the March 31, 1994 hearing, provided further evidence of commingling, as the appellee testified that it was the parties' practice to deposit money into the Society account and then transfer these funds to their joint checking account. While the appellant traced the origin of the Society account to before the marriage, he failed to trace the monies in the account at the time of the divorce by a preponderance of the evidence so that the Society account could be classified as separate property. See *Peck v. Peck* (1994), 96 Ohio App.3d 731, 734, 645 N.E.2d 1300, 1301–1302.

The appellant's first assignment of error is overruled.

The appellant submits in his second assignment of error that the referee erred in her determination that the marital equity in the parties' marital home amounted to $13,937 instead of $9,975.19. The appellant contends (1) that the referee selected an inappropriate date for valuating and dividing the marital home, and (2) that the referee miscalculated the amount the appellant contributed toward the down payment of the marital home. We will address these arguments in order.

The fair market value of the marital home, as stipulated to by the parties, was $138,000. The referee found that as of January 1, 1994, there was a mortgage due and owing to Society Bank in the sum of $58,873, leaving an equity of $79,127. The referee found that the appellant contributed $65,200 of his premarital assets towards the down payment of the home and subtracted the $65,200 figure from the $79,127 of equity, leaving the parties with $13,927 in net marital equity. The referee then awarded the appellant the $13,927 as part of the property division.

The appellant argues that subsequent to the parties' separation on July 31, 1993, he remained at the marital residence and was solely responsible for making mortgage payments. Therefore, the appellant contends that the referee should have calculated the mortgage balance from the July 31 separation date instead of January 1, 1994.

Marital property is all property acquired by the spouses "during the marriage," except separate property. R.C. 3105.171(A)(3). R.C. 3105.171(A)(2)(a) defines "during the marriage" as the period of time from the date of the marriage through the date of the final hearing. R.C. 3105.171(A)(2)(b), an exception to R.C. 3105.171(A)(2)(a), provides that a trial court may, if equity requires, select dates other than the marriage date and final hearing date in determining marital property. R.C. 3105.171(G) requires the trial court to "make written findings of fact that support the determination that the marital property has been equitably divided and shall specify the dates it used in determining the meaning of 'during the marriage.'" In *Moll v. Moll* (June 17, 1993), Wyandot App. Nos. 16–92–27 and 16–92–30, unreported, 1993 WL 210512, this court concluded that "a party

cannot pick and chose [*sic*] what dates to valuate certain items of marital property. Valuations of the marital property must be determined as to a specific date (*i.e.*, date of permanent separation, *de facto* termination of the marriage or date of the final divorce hearing.)"

In this case, the referee failed to specify the dates she used in determining the meaning of "during the marriage." Instead, the referee selected a variety of dates for purposes of valuating and dividing the marital property. For example, the referee selected July 21, 1993, for valuating the parties' joint checking and savings account at Society Bank. July 21, 1993 was also chosen by the referee in valuating the parties' joint savings account at Bank One. Yet, the referee selected June 30, 1993 for valuating the appellant's 401(K) retirement plan at Goodyear. The referee valuated an IRA rollover account as of February 1994. As noted above, the referee selected January 1, 1994 to valuate the marital home.

■ The parties were married in July 1986. They separated on July 31, 1993. The final hearing before the referee occurred on April 12, 1994. The trial court's final decree of divorce was journalized on December 23, 1994. While there may be an equitable reason for selecting January 1, 1994 as the date to valuate the marital home, that equitable reason is not reflected in the referee's report. In the absence of such an equitable determination, the January 1, 1994 valuation date bears no logical relationship to the dates typically employed in valuating and dividing marital property, *e.g.*, the date of permanent separation, the *de facto* termination date, or the date of the final hearing. Therefore, we conclude the referee's selection of January 1, 1994, as the date to valuate the marital home constitutes an abuse of discretion.

■ The appellant also argues that he contributed $68,000 towards the down payment of the marital home, instead of the $65,200 number chosen by the referee. The referee selected the $65,200 figure based on the appellant's Exhibit F. Exhibit F is a Housing and Urban Development Settlement Statement (the "statement"). Line 101 of the statement lists the purchase price of the marital home at $133,000. Line 103 acknowledges $2,652.42 in settlement charges assessed against the borrowers. Line 202 of the statement reports that the parties obtained a $65,000 mortgage. Line 205 documents a $200 loan processing fee paid on behalf of the borrower. Line 220 of the statement reports that $65,200 was paid by the bank for the parties, a combination of the $65,000 mortgage and $200 loan processing fee. Line 303 states that $70,452.42 was received in cash from the parties as a down payment, the sum of the $2,265.42 settlement charge and $67,800 balance due for the down payment ($133,000 − $65,200 = $67,800) The appellant testified at the April 12, 1994 hearing that his employer, Goodyear, paid the settlement charges. It is undisputed that the appellant paid the down payment. Based on the figures contained in the

statement and the appellant's testimony, it is apparent that the down payment amounted to $67,800. It is also apparent that the referee mistook the $65,200 loan figure contained in line 202 of the statement for the amount of the down payment. Consequently, the referee's final property division overstated the appellant's equity in the marital residence, thus skewing the referee's final division of the marital property.

R.C. 3105.171.(C)(1) requires that the "division of marital property shall be equal" except where equal division would be inequitable. Then the court is permitted to divide the marital property in a manner that the court deems equitable. R.C. 3105.171.(C)(1). Such a decision is for the trier of fact, not a reviewing court. The appellant's second assignment of error is well taken and it is sustained.

Accordingly, this cause is remanded to the trial court to select one date for the termination of the marriage and to value the martial assets as of that date. Additionally, in light of the documentary evidence, the trial court is to determine what effect, if any, the appellant's $67,800 down payment has on the equitable division of the marital property.

## III

Having found error prejudicial to the appellant herein, in the particulars assigned and argued, the judgment of the trial court is reversed as to the division of the marital property and affirmed in all other respects and the cause is remanded for further proceedings in accordance with this opinion.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

THOMAS F. BRYANT, P.J., and HADLEY, J., concur.