OPINION
This appeal arises out of a judgment on the issues of child support and division of real and personal property. Following the divorce of the parties, a final hearing was held before a magistrate on December 22, 1998. The magistrate issued his decision and order which was later affirmed by the trial court on August 20, 1999 with only one modification of the child support calculation, which is not relevant to this appeal. Defendant-Appellant Jacob A. Karg ("Jacob") appeals this decision of the trial court raising the following three assignments of error:
 The trial court abused its discretion to the prejudice of the Defendant-Appellant when it classified real estate as marital property.
 The trial court abused its discretion to the prejudice of the Defendant-Appellant when it did not account for certain separate personal property of Appellant.
 The court erred in finding that the Defendant has a combined income of $13,188.00 per year from Social Security Disability and a retirement pension.
At the final hearing on these issues, the following evidence was presented. In regard to Jacob's income, he testified that he received $784 per month from Social Security Disability, $315 per month from his retirement pension, and $454 every two weeks from Worker's Compensation. Jacob's attorney further argued that the Social Security Administration now had required Jacob to pay back money it had paid out to Plaintiff-Appellee Carol Karg ("Carol"), their daughter Amy, and Jacob's other daughter Missy, over approximately a ten-year period. The amount to be paid back was apparently $145 per individual per month, which would be deducted from his Worker's Compensation checks. Jacob presented no documentation regarding this payback requirement.
With respect to the real estate referred to as the Townsley property, both parties offered testimony regarding the source of the down payment. Jacob claimed that he sold a Springfield residence he owned prior to his marriage to Carol and used $10,000 of the proceeds as a down payment on the Townsley property. Consequently, he feels that at least $10,000 of the value of the real estate should be his separate property. On the other hand, Carol testified that the Springfield residence actually belonged to her prior to its sale. She claims she moved into the property immediately following Jacob's divorce from his previous wife and the deed was transferred into her name at that time. The couple lived there for three to four years, while both paid toward the mortgage on the property. Soon after they were married, they sold the Springfield residence and used $10,000 from the proceeds as a down payment on the Townsley property. Jacob did not dispute this version of events espoused by Carol, only adding that his sister contributed to paying the Springfield property mortgage. Despite this information, Jacob still believes he is entitled to $10,000 as separate property.
Finally, the parties intensely disputed the origin of many personal property items. Jacob argued that a large number of the items Carol claimed as marital property was actually his separate property obtained prior to the marriage. On appeal, it appears to this court Jacob's main contention is that the tools listed on Plaintiff's Exhibit "A" at the final hearing should have been classified as his separate property. Jacob was unable to present any evidence or testimony aside from his own during the hearing to substantiate that he owned these tools prior to the marriage. Instead, he relies on the fact that he was a carpenter by trade from 1948 or 1949 until October of 1984, four months after his marriage to Carol. Since over thirty-five years prior to the marriage was spent as a carpenter and only four months after the marriage, he feels this is sufficient to demonstrate the tools more likely were purchased prior to the marriage.
 I
In his first assignment of error, Jacob argues that the trial court abused its discretion by classifying the Townsley real estate as marital property. It is within the sound discretion of a trial court to classify property as either marital or separate property in divorce cases. R.C. 3105.171(B); Neeley v. Neeley
(Aug. 28, 1998), Montgomery App. No. 16721, unreported, p. 2. This determination will not be disturbed on appeal absent an abuse of that discretion. Landry v. Landry (1995), 105 Ohio App.3d 289,291, citing Martin v. Martin (1985), 18 Ohio St.3d 292, 294. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
Jacob argues that his separate property was used as a $10,000 down payment on the Townsley property. Although using separate property as a down payment on a marital residence commingles these funds with marital funds, this commingling does not destroy its status as separate property unless the funds are not traceable. R.C. 3105.171(A)(6)(b); Peck v. Peck (1994), 96 Ohio App.3d 731,734. However, the burden of tracing an asset is on the party who seeks to establish its status as separate property. Peck, supra. So, Jacob must prove by a preponderance of the evidence that the $10,000 down payment on the Townsley real estate was in fact his separate property. Id.
Several courts have found documentary evidence is necessary in order to trace an asset back to nonmarital property. See Zeefev. Zeefe (1998), 125 Ohio App.3d 600, 614-15; Williams v. Williams
(1996), 116 Ohio App.3d 320, 327; Peck, supra. In Zeefe, the Appellant pointed to several withdraws from premarital accounts just prior to the purchase of the home to prove that the down payment was separate property. Zeefe, supra. The trial court found no evidence demonstrating these funds were used as part of the purchase price of the home, and thus were not traceable. Therefore, the appellate court held there was no abuse of discretion in distributing the residence as marital property. Id.
Similarly, in Peck, the trial court found the residence to be marital property even though Appellee conceded that Appellant's premarital funds were used in its purchase. Peck, supra. Since neither party presented evidence tracing the financial history of the asset, the court held it must be classified as marital property. Id.; see also Woolum v. Woolum (June 28, 1993), Clermont App. No. CA92-12-116, unreported; Wells v. Wells (May 8, 1989), Butler App. No. CA88-04-050, unreported.
The record is clear that Jacob presented no documentary evidence that he used $10,000 of his separate property as a down payment on the Townsley real estate. During the hearing, he mentioned that he had a real estate contract at home, but did not bring it with him to court. It is not clear whether this document would even establish the source of the funds used as a down payment. Nevertheless, in his appellate brief, Jacob also claims it was error for the trial court not to allow time to present this documentation. Unfortunately, during the trial, neither Jacob nor his counsel requested time to obtain this evidence and present it to the court. Since no request for a continuance to submit such documentation was made, we can hardly say it was error not to allow it. See Bolton v. Delco Moraine Div. General Motors Corp.
(Jan. 7, 1992), Montgomery App. No. 12460, unreported.
Without any documentation, Jacob only offered his own testimony that the Springfield residence belonged to him and $10,000 of the proceeds from its sale was used as a down payment. On the other hand, he admitted that Carol lived with him at the Springfield property three to four years before they sold it and that the deed was in her name. Based on this evidence, the trial court did not abuse its discretion in classifying the Townsley real estate as marital property. Accordingly, Jacob's first assignment of error is overruled.
 II
Jacob also assigns error to the trial court's classification of personal property. As stated previously, the trial court has the discretion to determine whether an asset should be classified as marital or separate property. Neeley v. Neeley, Montgomery App. 16721, at p. 2. The party claiming an asset is separate property has the burden to prove it by a preponderance of the evidence. Peck v. Peck, 96 Ohio App.3d at 734.
In the present case, Jacob argued that several assets Carol claimed as marital property were in fact his separate property. The majority of these items were tools. Jacob testified that he began a career as a carpenter in 1948 or 1949, and continued until October of 1984, when he was disabled. Only the last four months of his working life as a carpenter occurred during his marriage to Carol. Consequently, he claims the majority of his tools must have been purchased prior to their marriage. However, he presented no other evidence that these items were separate property.
Jacob did request a continuance at the end of the hearing in order to call at least one witness that could testify to his ownership of the tools prior to the marriage. This continuance was denied. The decision to grant or deny a continuance is in the broad, sound discretion of the trial court. State v. Schackelford
(March 31, 1999), Greene App. No. 98 CA 82, unreported, citingState v. Unger (1981), 67 Ohio St.2d 65, 67-68. In a pretrial order dated November 6, 1998, the trial court informed the parties the manner in which personal property would be addressed and decided at the December 22, 1998 hearing. Both parties had sufficient time to gather documents or subpoena witnesses to meet their burden of proving assets to be separate property if they so desired. The record does not reveal Jacob made any attempt to secure such evidence by the hearing date. Consequently, the trial court did not abuse its discretion in denying the continuance which was requested at the end of the hearing.
Further, the trial court did not abuse its discretion in finding all of the personal property on Plaintiff's Exhibit "A" to be marital property due to the lack of evidence to the contrary. Accordingly, Jacob's second assignment of error is overruled.
 III
Finally, Jacob argues in his third assignment of error that the trial court erred in determining his income for child support purposes. A trial court's decision regarding child support will not be reversed absent an abuse of discretion. Booth v. Booth
(1989), 44 Ohio St.3d 142, 144. As the trier of fact, the trial court must weigh the credibility of the witnesses and their testimony when determining the income of the parties. Getter v.Getter (1993), 90 Ohio App.3d 1, 9. If there is competent, credible evidence to support the finding of the trial court, that finding will not be disturbed on appeal. Id., citing Myers v.Garson (1993), 66 Ohio St.3d 610, 614.
During the final hearing, Jacob testified that he received $784 per month from Social Security, $315 per month from his pension and $454 every two weeks from Worker's Compensation. He further stated that Social Security had now required him to pay back approximately ten years of payments made to his wife and two daughters at $145 per month per person. Jacob was unable to present any documentary evidence to support this assertion. Subsequently, Jacob and his counsel were reminded that the court has continuing jurisdiction over child support issues if Jacob were able to produce evidence documenting this payback at some point in the future. However, without any evidence presented at trial, the court was unable to consider it in calculating his current income.
Without any documentary evidence to support this payback requirement, the trial court did not act arbitrarily or unreasonably by not including it in the income calculation. Accordingly, Jacob's third assignment of error is overruled.Judgment affirmed.
WOLFF, J., and YOUNG, J., concur.
Copies mailed to:
Phillip L. Beard, Michael McCord, HON. JUDSON L. SHATTUCK, JR.