OPINION
Phyllis Bell is appealing the judgment of the Miami County Common Pleas Court domestic relations division, which granted a divorce to Phyllis Bell and Jerry Bell and divided the parties' property.
Phyllis Bell and Jerry Bell were married on February 14, 1996 and at that time each held assets which were and remained separate property.[1]
During the marriage the parties acquired an interest in a property known as Villa Drive, which is a multi-family housing unit. The down payment for the purchase of the property came solely from the separate funds of Phyllis generated prior to her marriage and a gift of money from her brother to her. Jerry did not provide any money towards the down payment of the property. The mortgage payments were made on the property from the rental monies collected. No marital funds were used to either improve the property or manage the property. Phyllis managed the property along with other rental properties, and Jerry testified that he had done some minor maintenance on the property.
When dividing the property between the parties, the magistrate found that the Villa Drive property was marital property with the exception of the $50,000 that Phyllis paid as a down payment on the property, which was held to be separate property. Therefore, the approximately $32,000 in equity of the property was divided equally between Phyllis and Jerry. The trial court based its conclusion that the property was marital solely on the fact that the property's title had been held in both Jerry and Phyllis's name and that both parties had signed the mortgage and promissory note. The magistrate specifically stated that it did not address or consider whether the appreciation in the property was marital based on appreciation during the marriage from one or more of the parties' contributions. Phyllis filed as an objection to the magistrate's decision the finding that the Villa Drive property was marital property. However, the trial court overruled this objection and upheld the magistrate's opinion as to this property.
Additionally, Jerry filed an objection to the trial court from the magistrate's opinion concerning another property owned by the parties. The other property, referred to as the State Route 571 property, was a two acre parcel of land with two houses on the property. The magistrate found that the property was marital property but that $40,000 of the property was Jerry's separate property and $6,000 of the property was Phyllis's separate property. These findings stemmed from testimony that approximately $46,000 was made as a down payment on the property, of which $40,000 Jerry paid from proceeds from the sale of a home he owned prior to the marriage and $6,000 of which Phyllis paid from proceeds from the sale of her home which she owned prior to her marriage. The magistrate awarded the State Route 571 property to Jerry and ordered that Jerry pay Phyllis $6,000 for her separate property portion of the State Route 571 property. Further, in calculating an equitable distribution of the parties' marital property, the magistrate utilized a chart in which he placed the value of certain marital property in a column for either Jerry or Phyllis depending on which party received the property. For example, the Villa Drive property was awarded to Phyllis; therefore, the magistrate credited Phyllis with $32,000 of marital property. The magistrate then added the two columns to see if they were equal. In the instant case, the columns were not equal and the magistrate therefore ordered Jerry to pay Phyllis approximately $16,000 to equally divide the marital property of the parties. In calculating the amount of marital property to credit Jerry for the State Route 571 property, the magistrate took the value of the property and subtracted the outstanding mortgage, Jerry's $40,000 in separate property, and Phyllis's $6,000 in separate property to arrive at the marital property value.
In his objections to the magistrate's decision, Jerry argued that the magistrate erred in ordering him to pay Phyllis $6,000 for her separate property because the magistrate had already included the $6,000 in its calculation shown in the chart. The trial court agreed and amended the magistrate's order to remove the order for Jerry to pay Phyllis $6,000 for her separate property share of the State Route 571 property.
Phyllis has now filed an appeal from the trial court's decision upholding the magistrate's ruling on the Villa Drive property and its amendment of the magistrate's order regarding her $6,000 of separate property in the State Route 571 property.
Phyllis raises the following assignments of error:
 "I. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT AWARDED [JERRY] A ONE-HALF INTEREST IN THE APPRECIATED VALUE OF THE VILLA DRIVE PROPERTY, AND REFUSED TO ACKNOWLEDGE THAT APPRECIATION AS THE SEPARATE PROPERTY OF [PHYLLIS].
 "II. THE TRIAL COURT ERRED WHEN IT REFUSED TO ORDER [JERRY] TO PAY [PHYLLIS] $6,000 IN RECOGNITION OF CERTAIN SEPARATE PROPERTY OF [PHYLLIS], BASED UPON A MATHEMATICAL ERROR BY THE COURT IN REVIEWING THE MAGISTRATE'S DECISION."
Appellant's first assignment of error:
 Phyllis argues that the trial court abused its discretion in determining that the Villa Drive property was marital property and equally dividing the equity in the property, except for her $50,000 of separate property from her down payment on the property. We agree.
A trial court exercises broad discretion when making an equitable division of marital property and awarding spousal support. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 218. Therefore, a trial court's decision on these matters will not be overturned absent an abuse of discretion. Id. An abuse of discretion amounts to more than a mere error of judgment, but implies that the court's attitude was unreasonable, arbitrary, or unconscionable. Id. at 219. Appellate "review of the trial court's classification of property as marital or separate is limited to whether that determination is supported by the manifest weight of the evidence." Marcum v. Marcum (1996), 116 Ohio App.3d 606, 613.
R.C. 3105.171(B) provides that "[i]n divorce proceedings, the court shall, and in legal separation proceedings upon the request of either spouse, the court may, determine what constitutes marital property and what constitutes separate property." An inheritance received by one spouse during the course of the marriage is separate property and "[t]he commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the property is not traceable." R.C. 3105.171
(A)(6)(a)(i)(b).
In enacting R.C. 3105.171, the legislature clarified that the form of ownership was not a determinative factor in distinguishing marital property from separate property. Price v. Price, Geauga App. No. 2000-G-2320, 2002-Ohio-299, at ¶ 27. The major means for determining whether an asset is separate or marital property is the traceability of the asset. Id. The party who is attempting to prove that the asset is traceable separate property must prove the traceability by the preponderance of the evidence. Id. at ¶ 23. Separate property does not lose its identity as separate property solely "because it is commingled with other property, unless the commingling makes the separate property not traceable." R.C. 3105.171(A)(6)(b); Wells v. Wells (Dec. 30, 1999), Greene App. No. 99-CA-0010.
This Court in Helton v. Helton set forth the following applicable law:
 "We recognize as a threshold principle that `spouses can change separate property to marital property based on actions during the marriage.' Moore v. Moore
(1992), 83 Ohio App.3d 75, 77, 613 N.E.2d 1097, 1099. The most commonly recognized method for effecting this change is through an inter vivos gift of the property from the donor spouse to the donee spouse. The essential elements of an inter vivos gift are `(1) an intention on the part of the donor to transfer the title and right of possession of the particular property to the donee then and there and (2) in pursuance of such intention, a delivery by the donor to the donee of the subject-matter of the gift to the extent practicable or possible, considering its nature, with relinquishment of ownership, dominion and control over it.' Bolles v. Toledo Trust Co. (1936), 132 Ohio St. 21, 7 O.O. 60, 4 N.E.2d 917, paragraph one of the syllabus. Further, `[a]n inter vivos gift is an immediate, voluntary, gratuitous and irrevocable transfer of property by a competent donor to another.' Smith v. Shafer (1993), 89 Ohio App.3d 181, 183, 623 N.E.2d 1261, 1263, citing Saba v. Cleveland Trust Co. (1926), 23 Ohio App. 163, 165, 154 N.E. 799, 800. The donee has the burden of showing by clear and convincing evidence that the donor made an inter vivos gift. Id., citing In re Fife's Estate (1956), 164 Ohio St. 449, 456, 132 N.E.2d 185, 190; see Bolles, at paragraph two of the syllabus." (1996), 114 Ohio App.3d 683, 685-686.
Although separate property can be transformed by a grantor spouse into marital property by a gratuitous transfer of a present interest in the property, the mere fact that the title to property is held in a form of co-ownership does not determine whether the property is marital or separate property. Id. Where a property is held in joint title but the property is traceable separate property of one spouse, the court must focus on whether the party had donative intent is putting the separate property in joint title. Id. Several cases have held that where the separate property is placed in joint title to accomplish a specific objective, rather than due to a true donative intent, the property remains separate despite the joint title. Sweeney v. Sweeney (June 21, 2000), Summit App. No. 19709 (finding no donative intent where property was put in joint title to provide for daughter); Geuy v. Geuy (May 1, 1998), Champaign App. No. 97-CA-22 (finding no donative intent where property was put in joint title in order to obtain financing); Schell v.Schell (June 16, 1992), Clark App. No. CA 2876 (finding no donative intent where property was put in joint title in order to obtain a mortgage).
The Ohio Supreme Court has held that "an increase in the value of separate property due to either spouse's efforts is marital property."Middendorf v. Middendorf (1998), 82 Ohio St.3d 397 citing R.C. 3105.171. However, passive income and appreciation acquired from separate property by one spouse during the marriage is separate property. R.C.3105.171(A)(6)(a)(iii).
In the instant case, Phyllis testified that the money for the down payment on the Villa Drive property came from Phyllis's separate funds remaining from her sale of a property she owned prior to marriage and a gift of money from her brother. (Tr. 242). Further, Jerry testified that none of his money was used for the down payment on the Villa Drive property. (Tr. 47, 73, 77). Based on this, the magistrate and trial court found that the $50,000 down payment for the Villa Drive property was paid for with Phyllis's separate property. Additionally, Phyllis testified that the mortgage payments on the Villa Drive property had been entirely paid for by the rent proceeds from the property. (Tr. 242-243)
Jerry asserts that Phyllis testified at the hearing that she shared the rent monies from the Villa Drive property with Jerry and viewed the monies as belonging to both herself and Jerry. (Appellee's brief at 9 pointing to Tr. 23-24, 27). However, after reviewing the transcript it is clear that Phyllis's testimony is in reference to another rental property the parties owned known as the Church Street property. (Tr. 22-27). Also, evidence was presented that Jerry's name was listed on the deed of the Villa Drive property along with Phyllis's name. (Tr. 13-14, 16). Jerry and Phyllis's names were also both listed on the mortgage and promissory note for the Villa Drive property. (Tr. 20-21, 47-48). However, Phyllis and Jerry testified that Jerry's name was placed on the mortgage, deed, and promissory note in order to improve Phyllis's credit worthiness so that she could obtain the mortgage to purchase the Villa Drive property. (Tr. 14, 74-75). Moreover, Jerry testified that he had performed maintenance on the Villa Drive property which he believed caused the property to appreciate. (Tr. 78).
The magistrate in its opinion found that the Villa Drive property was marital property. This finding was based solely on the fact that Jerry and Phyllis's names were on the deed, mortgage, and promissory note. The trial court agreed with this reasoning in upholding this portion of the magistrate's opinion. Further, the magistrate made no finding that Phyllis had donative intent when she had Jerry to sign the deed, mortgage, and promissory note on property in which the down payment had been made with her separate property. Moreover, the magistrate stated:
 "The [c]ourt does not have to decide whether [Jerry] is entitled to share in the appreciative value of Villa, because this is not the separate property of [Phyllis]. In other words, if this had been the separate property of [Phyllis] the question or issue of whether [Jerry] gets to share in the appreciative value becomes a question for the court to determine under Middendorf. That issue is not before the court because [Jerry] is an equal owner of the property along with [Phyllis] being the other equal owner. As marital property (both being owners) he is entitled to equitably share in the appreciative value of said property." (Magistrate's opinion at 4).
On appeal, Phyllis asserts that the trial court abused its discretion in determining that the Villa Drive property was marital property based solely on the fact that Jerry and Phyllis had signed the mortgage, promissory note, and deed. We agree. There is no dispute that the down payment on the Villa Drive property is traceable as Phyllis's separate property and that the mortgage payments were made with the rent proceeds from the property. Further, there was no evidence offered at trial that Phyllis had donative intent when she put Jerry's name on the deed to the Villa Drive property. Rather, we find this case is similar to Geuy andSchell, in which the property was placed in joint title in order to obtain a mortgage on the property. The mere fact that the property was purchased during the marriage and was jointly titled under both Jerry and Phyllis's name is insufficient to transfer her separate property into marital property. Phyllis presented clear, convincing evidence that the entire down payment for the property was her traceable separate property and that the Villa Drive property was financially self sufficient. Further, she presented evidence that she had no donative intent in having Jerry sign the deed along with her but did so in order to obtain the mortgage for the property. The trial court abused its discretion in determining that the Villa Drive property absent Phyllis's down payment was marital property based solely on the fact that the property was jointly titled in the parties' name and that Jerry had signed the mortgage and promissory note for the property. This did not amount to clear, convincing evidence that the Villa Drive property was marital property.
Although it is possible under Middendorf that the appreciation on the Villa Drive property could be marital property because marital efforts caused the appreciation on the property, the lower court did not make a finding on that issue and thus we cannot use that as a basis to support the lower court's ruling. The judgment of the trial court that the Villa Drive property was marital property with the exception of $50,000 of separate property is reversed and remanded. Phyllis's first assignment of error is sustained.
Appellant's second assignment of error:
 Phyllis argues that the trial court erred in amending the order of the magistrate to find that Jerry did not need to pay her $6,000 for her portion of separate property in the State Route 571 property. We agree.
R.C. 3105.171(B) provides:
 "In divorce proceedings, the court shall * * * determine what constitutes marital property and what constitutes separate property. In either case, upon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section."
Also, R.C. 3105.171(C)(1) states:
 "Except as provided in this division or division (E) of this section, the division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable."
If a trial court's division of property is clearly based on a mistake of fact which alters the court's calculation, an appellate court cannot affirm the judgment as fair and equitable. Young v. Young (2001),146 Ohio App.3d 34, 37; Landry v. Landry (1995), 105 Ohio App.3d 289,293.
Having reviewed the magistrate's decision and the decision of the trial court, we find that the trial court misunderstood the magistrate's use of the chart in its decision. The State Route 571 property was purchased with a down payment of approximately $46,000. Both parties agree that $40,000 of this down payment was Jerry's separate property and $6,000 of this down payment was Phyllis's separate property. Further, the magistrate found that the property was marital property and thus the equity in the property should be divided equally absent each party's separate property. However, rather than order that the property be sold and the proceeds divided, the magistrate awarded the property to Jerry. In this case, the parties owned several properties and had several other marital assets, which the magistrate awarded to one party or another. Therefore, the magistrate used a chart in its decision to determine if the marital property had been equally distributed. The chart had a column for Jerry and another for Phyllis. As each property was addressed, the value of the marital property would be entered in the column of the party who was awarded the property. Further, on properties which were encumbered by a mortgage or contained separate property, the magistrate would include on the side of the chart how he calculated the amount of the property which was marital property.
Since Jerry was awarded the State Route 571 property, the value of the marital property portion of the State Route 571 property was entered in his column on the magistrate's chart. The side of the chart provided that the magistrate had calculated the value of the marital property portion of the State Route 571 property by taking the value of the property, subtracting the outstanding mortgage, Jerry's $40,000 of separate property, and Phyllis's $6,000 of separate property. Jerry argued to the trial court that the magistrate had ordered him to pay Phyllis her $6,000 twice by ordering him to pay it and then using the $6,000 in the calculation in the chart. The trial court agreed and refused to order Jerry to pay Phyllis $6,000. This was clearly error. By refusing to order Jerry to pay the $6,000, Jerry received the equity of the entire State Route 571 property absent only Phyllis's half interest in the marital equity in the property. Instead Jerry should have received the equity of the State Route 571 property absent both Phyllis's half interest in the martial equity portion of the property and Phyllis's $6,000 of separate property. By amending the order such that Jerry did not have to pay Phyllis the $6,000, the trial court essentially gave Phyllis's $6,000 of separate property to Jerry. We agree with Phyllis that this was error and her second assignment of error is sustained. The judgment of the trial court refusing to order Jerry to pay Phyllis $6,000 for her separate property in the State Route 571 property is reversed.
The judgment of the trial court is reversed and remanded.
BROGAN, J. and FAIN, J., concur.
[1] In the interest of clarity, the parties will hereinafter be referred to by their first names.