JOURNAL ENTRY and OPINION
{¶ 1} The domestic relations division of the court of common pleas granted Francisco Meza a divorce from Dorothy Schweinfurth on grounds that they had been living separate and apart without interruption or cohabitation for more than one year. The court made a detailed disposition of marital assets, and Meza appeals certain aspects of that order.
 I {¶ 2} Meza first complains that the court erred in choosing the date of the filing of the complaint for divorce as the termination date of the marriage. He claims that date prejudiced him because both parties were managing separate marital real estate, but Meza's real estate was unprofitable while Schweinfurth's property generated income for her. He claims that the court needlessly disregarded the statutory presumption that the date of trial should be considered the termination date of the marriage and this led to Schweinfurth receiving more money than she was entitled to receive.
 {¶ 3} R.C. 3105.171(A)(2)(a) and (b) state:
 {¶ 4} "(a) Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation;
 {¶ 5} "(b) If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, "during the marriage" means the period of time between those dates selected and specified by the court."
 {¶ 6} Because the court has discretion to decide if equity requires it to use a date other than the day of trial as the termination of the marriage, we review the court's decision for an abuse of discretion. Berish v. Berish (1982), 69 Ohio St.2d 318; Schneider v.Schneider (1996), 110 Ohio App.3d 487, 493.
 {¶ 7} The magistrate found that the parties' marriage terminated in June 1995 when Schweinfurth filed her complaint for separation. Both parties objected to this finding. Meza wanted the October 1998 trial date to be considered the termination date, while Schweinfurth wanted a June 1994 date because that was when they began living separate and apart with no hope of reconciliation.
 {¶ 8} Although the parties may not have been living together, Schweinfurth held out the hope that a reconciliation might occur. In Spring 1995, before she filed the separation complaint, Schweinfurth sent Meza a letter in which she outlined several options, in question form, for their future. Two of those options were "do you want to live together again" and "do you want to leave the option open to having a future when we will live together again." Neither of these options seem consistent with a claim that the marriage had been irretrievably lost before Schweinfurth filed her complaint.
 {¶ 9} While the marriage had not ended in 1994, the evidence showed that it was over prior to the time of trial. The magistrate found that once the complaint for divorce had been filed, there was no further talk of reconciliation nor commingling of marital funds or concerted financial activity. See Badovick v. Badovick (1998), 128 Ohio App.3d 18,32. Moreover, Meza seemed to concur in Schweinfurth's claim for separation by filing his own counterclaim for divorce.
 {¶ 10} Meza's primary argument in support of his claim that the trial date should be considered the termination date of the marriage is premised on real estate valuations that were made in preparation for trial. He claims that the court's decision to use the filing date of the complaint rendered the data inaccurate for purposes of dividing marital assets.
 {¶ 11} Meza has it wrong when he argues that the appraisal dates for marital assets have any relevance to the separate and distinct question of when the marriage terminated. Those appraisals are only relevant to the division of marital assets, not the timing of when the marriage ended. In Landry v. Landry (1995), 105 Ohio App.3d 289,292-293, the court cited to Moll v. Moll (June 17, 1993), Wyandot App. Nos. 16-92-27 and 16-92-30, for the proposition that "a party cannot pick and chose [sic] what dates to valuate certain items of marital property. Valuations of the marital property must be determined as to a specific date (i.e., date of permanent separation, de facto termination of the marriage or date of the final divorce hearing)." The date of the termination of marriage controls, not the date of the valuation of marital assets. We find no abuse of discretion.
 II {¶ 12} Meza next complains that the court erred when it failed to divide the amount of depreciation on a marital property located in Texas. The parties bought the property for investment purposes in late 1981 and paid $79,000. They used $10,170 of Meza's separate funds for the down payment. It performed poorly as an investment and showed yearly losses from 1983-1995. At the time of trial, the property was worth only $65,000 with a mortgage balance of $59,240. The court awarded Meza the remaining equity of $5,760 in the property. Meza argues that the court failed to allocate any of the loss caused by the depreciation of the property. He claims this left him to shoulder the burden of a bad investment that was the product of the marriage, and that fairness dictates that both parties assume some share of the loss.
 {¶ 13} R.C. 3105.171(A)(3)(a)(iii) states that "* * * all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage" is marital property subject to division. The statute does not use the word "depreciation." In Tanagho v. Tanagho (Dec. 30, 1993), Franklin App. No. 92AP-1190, the Tenth District held that the absence of the word "depreciation" from R.C. 3105.171 meant that the depreciation of a spouse's separately owned marital asset could not be charged against the marriage. The Fifth District reached a different result in Bryant v. Bryant (Jan. 28, 1999), Coshocton App. Nos. 97CA8 and 98CA1. Bryant held:
 {¶ 14} "It seems to us only equitable the parties should share in any losses just as they share in any gains. To hold otherwise gives the appellee a lop-sided marital interest, wherein she can only profit, never lose, regardless of what happens to the holdings during the marriage. We find, to the contrary, the marriage itself should bear the risk of investments, and should profit or lose depending upon the appreciation or depreciation."
 {¶ 15} While we believe Bryant states the better position in the abstract, we are unable to say in this case that the court erred by failing to apportion the loss on the property. The domestic relations court is guided by the basic premise that there should be an equal division of marital assets. See R.C. 3105.171(C)(1). Sometimes the circumstances are such that a dollar-for-dollar division would be unjustified and it would be more appropriate for the court to do equity rather than equality. Id. Even were we to assume that the court did err by failing to apportion the loss on the property, the amount of money that Meza is complaining about is so de minimus in light of the entire marital estate that we cannot consider it to be the basis for reversible error, much less an abuse of discretion. Although the court should in practice consider apportioning a loss on a marital asset in the same manner in which it would consider apportioning a gain, its failure to do so would not have been an abuse of discretion in light of the entire award of assets.
 III {¶ 16} Schweinfurth participated in an employer savings and investment plan during the marriage. The plan required Schweinfurth's employer to make contributions, and at the time of marriage the employer had contributed $4,267.99. Of that amount, only $2,560.79 had vested, with the remaining balance vesting during marriage. Schweinfurth did not make any contributions to the plan during the marriage. The court found that all of the employer's contributions held in the plan at the time of marriage should be counted as Schweinfurth's separate property, regardless that some of the portion vested after marriage. Meza complains that only the $2,560.79 that had vested at the time of marriage should have been considered Schweinfurth's separate property.
 {¶ 17} Meza concedes that he cannot find any cases directly on point, and Schweinfurth likewise cites us to no authority. In fact, Schweinfurth's expert candidly admitted that these kinds of valuations are not done frequently.
 {¶ 18} But we think it manifest that both the employee and the employer's contributions to the savings and investment plan were made before the marriage, so Schweinfurth's right to those funds accrued before marriage, subject only to vesting upon the later contingency of length of service with the employer. This contingency was in no way related to Meza's contributions as a spouse — Schweinfurth would have satisfied the contingency in any event, regardless whether she had married Meza. Schweinfurth's expert made this point directly, noting that "* * * vesting does not mean earned. It just means that you finally gain ownership title to something you have earned at an earlier date."
 {¶ 19} To underscore our holding here, we look to the principles underlying characterizations of marital property. We previously noted that R.C. 3105.171(A)(3)(a)(iii) defines as "marital property" all income and appreciation on separate property "that occurred during the marriage." This means that income earned by labor performed during marriage is marital property whether received during or after the marriage. Conversely, property earned by labor not performed during marriage is the separate property of the spouse who earned it even if the income is received during marriage.
 {¶ 20} Finally, we reject Meza's citation to one line ofEickelberger v. Eickelberger (1994), 93 Ohio App.3d 221, 226, as authority for the proposition that he is entitled to a share of the savings and investment plan because it vested during the marriage. When discussing general principles of law relating to when retirement benefits become marital assets, Eickelberger stated, "[r]etirement benefits, including pension rights, vested during the course of the marriage are marital assets to be considered in dividing marital property." This was a correct statement of law as applied to the facts of that case. Those facts showed that one spouse had a state retirement plan that was subject to division as marital property, while the other spouse participated in Social Security, which was governed by federal law and was not subject to division by a state court. The domestic relations court did not factor in the Social Security benefits of one spouse when dividing the other spouse's retirement plan. The court remanded the matter for the domestic relations court to consider the Social Security benefits before distributing the state retirement plan. Eickelberger,93 Ohio App.3d at 228.
 {¶ 21} The court heard competent credible evidence to show that employer contributions to Schweinfurth's retirement plan had been earned before marriage, but had not vested until after the parties married. Under these circumstances, we cannot say the court erred by finding the entire employer contribution to be Schweinfurth's separate property since the marriage had no impact on the amount of money held in the plan. Meza made no contribution to the plan, either directly or as a partner in marriage nor did his spouse during the marriage, so he is not entitled to those portions that accrued prior to marriage.
 IV {¶ 22} In addition to the previously discussed savings and retirement plan, Schweinfurth owned a second retirement account through M.K. Ferguson. That account held $43,447 as of December 1994, and the court held that the entire account was a marital asset. Meza states that both this account and the first account were not distributed immediately because more than two years went by before the court issued a final, appealable order declaring the rights of the parties. During that time the money continued to earn interest, although his divided share of the marital asset did not. Meza complains that Schweinfurth was not entitled to reap the benefit of that interest when she did nothing to help earn it.
 {¶ 23} Meza's argument incorrectly assumes that the subject accounts earned interest in the period between the magistrate's decision and the court's final order. The evidence showed the opposite because Schweinfurth admitted that she cashed out the accounts and transferred the money to her sons. While Meza might argue that "it is inconceivable that Appellee would not have reinvested these funds in another account somewhere to benefit from the substantial return on investment experienced by these types of funds at the time," there is no evidence in the record to support this fact. Without that evidence, we cannot grant Meza any relief.
 {¶ 24} An adjunct to this argument is that the length of time between trial and final judgment was so long that the court should have made some provision for interest on Meza's share of the marital property in its final award.
 {¶ 25} In the ordinary domestic relations case, when the court makes an order distributing marital assets from one party to another, that order "has the force of a money judgment, and the recipient is entitled to interest on any amount due and owing under the order but unpaid." Woloch v. Foster (1994), 98 Ohio App.3d 806, 812. This conclusion is consistent with R.C. 1343.03, which provides for interest on money due and payable upon judgments by any judicial tribunal.
 {¶ 26} The court ordered Schweinfurth to pay Meza a lump sum property division settlement of $45,070. Because this amount was due and payable upon judgment, Meza is entitled to postjudgment interest on that amount. The remaining division of marital assets did not require any judgment that became due and payable.
 {¶ 27} There is some appeal, however, to Meza's argument that the length of time between the trial and final judgment was so long that he has been unfairly penalized by not having the time value of his money. The magistrate conducted trial for five days between October 28 and November 4, 1996. Curiously, the magistrate's decision lists the year of trial as 1998. The magistrate did not issue her decision until April 2, 1999. The parties understandably asked for extensions of time in which to file objections to the magistrate's decision, and those were finally filed by September 1999. The court overruled Meza's objections in September 1999, but did not overrule Schweinfurth's objections until August 2000, nearly one year after they had been filed.
 {¶ 28} It is an understatement to say that it took too long for this case to be decided. In fact, it took an absurdly long time for the magistrate to issue her decision. Nothing about this case suggests a level of complexity that would require such an extraordinary length of time in which to issue a decision. Nor for that matter, is there any indication why it took the court more than one year to overrule objections and approve the magistrate's decision. The court adopted the magistrate's decision in its entirety, with only three minor clerical amendments. Even at that, the court failed to issue a judgment entry, and this caused a further delay because on appeal we were obliged to dismiss for want of a final appealable order. See Schweinfurth v. Meza (June 21, 2001), Cuyahoga App. No. 78507.
 {¶ 29} Despite our consternation with the delay in reaching final judgment, we cannot find merit to Meza's argument. It is important to understand that the court did not order that Meza receive a share of the retirement funds. The court only set a dollar value on the funds for purposes of valuing and dividing the marital assets. To be sure, the value of the retirement accounts would likely have increased, but so did the value of other assets in the marital estate. Meza was awarded an interest in certain real estate, and it is just as likely that the real estate increased in value as well. To be consistent, one would think that Meza would ask the court to revalue those assets as well.
 {¶ 30} In the end, if Meza believed that Schweinfurth had enriched herself by purposely liquidating the retirement accounts, he could have asked the court to make a distributive award under R.C. 3105.171(E)(3). He did not do so and thus will not be heard to complain on appeal that Schweinfurth has been unfairly enriched at his expense.
 {¶ 31} The assigned errors are overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant her costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court — Domestic Relations Division to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, A.J., CONCURS.
 DIANE KARPINSKI, J., CONCURS WITH SEPARATE CONCURRING OPINION.
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R.22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).