OPINION
{1} Defendant-appellant, Richard DeWitt, appeals a judgment by the Marion County Common Pleas Court, Domestic Relations Division, granting a divorce from plaintiff-appellee, Joyce DeWitt, and ordering the division of the parties' marital assets and spousal support. On appeal, Richard claims that the trial court's allocation of marital property was against the manifest weight of the evidence. He also contends that the trial court abused its discretion in both its allocation of marital property and in its order to pay spousal support. Because sufficient evidence supports the trial court's decision, we find that the trial court neither abused its discretion, nor that its decision was against the manifest weight of the evidence.
{2} Facts and procedural posture pertinent to the issues raised on appeal are as follows. Richard and Joyce DeWitt were married on April 9, 1971, and have three children who have since been emancipated. During the marriage, Joyce was primarily a homemaker; however, she is currently employed at Meijer and earns approximately $15,000 per year. Richard worked various jobs while the parties were married, resulting in his current employment with Honda where he earns approximately $50,000 per year.
{3} In April 2000, Joyce moved from the marital residence. Richard subsequently refinanced the parties' marital home in December 2000, acquiring an $85,000 mortgage, which was utilized to pay the remaining balance on the original mortgage and several thousand dollars of marital debt. The remaining money was used to purchase supplies for home repairs and improvements, which have yet to be completed.
{4} On August 1, 2001, Joyce filed a complaint for divorce, citing extreme cruelty and incompatibility. In addition, Joyce moved for temporary spousal support, which was granted by the trial court on November 7, 2001, in the amount of $500 per month. The record shows that Richard's temporary spousal support payments are in arrears.
{5} A hearing on the divorce was conducted on May 23 and 24, 2002. Thereafter, the trial court granted the parties a divorce and addressed the issues of property distribution and spousal support in a June 28, 2002 judgment entry. The trial court awarded Richard the marital home, valued at $65,000, and held that he was responsible for the mortgage, valued at $62,350. Richard was further ordered to pay a $3,093 balance on a Discover card in Joyce's name, and Joyce was responsible for the parties' MasterCard and Visa accounts, totaling $1,700 and $850, respectively. Since there was a disparity in the property distribution between the parties, the trial court ordered Richard to pay Joyce $3,597 from his 401K account with Honda. In addition, Richard was ordered to pay $500 per month in spousal support to Joyce until she reaches age sixty-five, remarries, dies, or cohabitates, and to pay any spousal support arrearage accumulated prior to the divorce decree.
{6} From this decision, Richard appeals, asserting three assignments of error for our review. Because the first and second assignments are interrelated, we will address them together.
Assignment of Error I
{7} "The trial court erred and abused its discretion in identifying and valuing marital property as its factual findings were against the manifest weight of the evidence."
Assignment of Error II
{8} "The trial court abused its discretion in ordering the Appellant to pay the Appellee's Discover card account."
{9} In his first assignment of error, Richard claims that the trial court's allocation of marital property and debts constitutes an abuse of discretion and was against the manifest weight of the evidence. Specifically, he claims that the trial court erred in valuing the parties' marital home, the debt associated with the home and a MasterCard credit card, and in not utilizing consistent dates for valuing Richard's 401K and Joyce's pension. Richard additionally maintains, in his second assignment of error, that the trial court abused its discretion by ordering him to pay a Discover credit card account that is in Joyce's name.
{10} When fashioning property divisions following a divorce, trial courts divide the marital property equally, "unless an equal division would be inequitable."[1] A trial court is granted broad discretion in determining how to award an equitable division according to the circumstances of each case before it.[2] In determining whether the decision was fair, equitable, and in accordance with the law[3] an appellate court cannot substitute its judgment for that of the trier-of-fact unless the trial court's decision amounts to an abuse of discretion.[4] An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable.[5]
 {11} Additionally, "[a] judgment of a trial court will not be reversed as being against the manifest weight of the evidence if the court's judgment is supported by some competent, credible evidence."[6] This highly deferential standard of review permits the affirmation of the trial court's judgment if there is "even `some' evidence" to support the court's finding.[7] Furthermore, "[a] reviewing court should be guided by a presumption that the findings of a trial court are correct, since the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the testimony."[8]
 {12} Richard initially argues that the trial court erred in determining the value of the marital residence. The evidence indicates that several appraisals of the home were conducted in the last few years. In 2000, Gene Slagle, a local real estate appraiser, valued the home at $30,000. The Marion County Auditors tax appraisal lists the house at $101,430, and, in Richard's anticipation of receiving a loan on the property, Mercantile Mortgage Company appraised the property in December 2000, at $90,000. Subsequently, in January 2002, the home was reappraised by Gene Slagle at $55,000, and, in May 2002, the home was appraised at $65,000 by another local real estate appraiser, Dan Murphy.
{13} The trial court found that neither the estimate for tax purposes nor the value attributed by Mercantile Mortgage Company, which only inspected the exterior of the home in anticipation of advancing a loan, were reliable appraisals. Accordingly, the court found that the $65,000 appraisal was the most accurate appraisal of the property because it was closest in time to the divorce hearing and included the parties' additional lot. Additionally, Richard testified at the divorce hearing that the $65,000 appraisal was conducted in contemplation of the parties' divorce. Because the trial court's finding is supported by the record, we cannot say that the court abused it's discretion in valuing the marital home or that the finding was against the manifest weight of the evidence.
{14} Richard further maintains that the trial court erred in ordering him to pay the remaining debt on the parties' marital residence because the mortgage was improperly evaluated. The evidence at trial demonstrates that Joyce moved from the marital home in April 2000. At that time, the parties agree that they owed approximately $32,350 on their then-current mortgage. Thereafter, Richard refinanced the marital residence, acquiring an $85,000 indebtedness. Testimony indicates that from this amount, Richard paid the remaining balance on the $32,350 mortgage and approximately $30,000 of marital debts. Additionally, Richard has utilized several thousand dollars to purchase materials for home repairs and improvements, which have yet to be completed. Based upon these facts, the trial court found that attributing the full $85,000 mortgage as marital debt would be inequitable; thus, the trial court found that the marital debt on the residence was $62,350, representing the mortgage owed by the parties prior to refinancing and the $30,000 of marital debt paid by Richard after refinancing.
{15} We find this allocation to be supported by the record herein. Joyce has not resided in the home since the parties separated in April 2000, and did not have a role in refinancing the residence. Additionally, the completion of the home repairs and improvements will further increase the value of the residence over time, a benefit attributable to Richard since he was awarded the home. Consequently, because the trial court's decision concerning the amount of mortgage debt is supported by sufficient evidence, we neither find that it was against the manifest weight of the evidence nor that it constituted an abuse of discretion.
{16} Within his first and second assignments of error, Richard also challenges the trial court's allocation of debt concerning two credit cards, a MasterCard and a Discover card. With regard to the MasterCard, which Joyce was ordered to pay, Richard argues that the evidence supports that the debt associated therewith was between $700 and $800 and not the $1,700 the court assigned to it. However, Richard fails to acknowledge that Joyce filed a motion to correct the record on November 12, 2002, because there was a discrepancy in the transcript concerning the value of the MasterCard debt. The original transcript stated that Joyce would pay her MasterCard, "a seven or eight hundred dollar balance." Upon review, the trial court granted Joyce's motion because there was a mistake in the transcription; the transcript was corrected to read that the MasterCard balance was "a seventeen hundred or eighteen hundred dollar balance." The trial court did not err in valuing the MasterCard debt.
{17} With respect to the Discover card, Richard avers that he should not have been ordered to pay the debt associated therewith because the card was solely Joyce's property. Ohio law defines "separate property" in pertinent part as "all real and personal property and any interest in real or personal property that is found by the court to be any of the following: * * * [a]ny real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage."[9] On the other hand, "marital property" is defined as "[a]ll real and personal property that currently is owned by either or both of the spouses * * * and that was acquired by either of both of the spouses during the marriage."[10] Additionally, the "[a]llocation of marital debt is inextricably intertwined with the division of marital property."[11]
 {18} The evidence herein reveals that the parties were married for approximately thirty years, during which time Joyce acquired a Discover card in her name alone. Testimony indicates that cash advances and purchases were made on the card for both parties' and their family's benefit and that Richard assisted in making payments on the card. Supported by this evidence, the trial court did not err in determining that the Discover account was a marital debt. Furthermore, based upon the assets awarded to Richard and the liabilities incurred, the trial court did not abuse its discretion in ordering Richard to pay the Discover account balance. After comparing the marital assets and debts assigned to Richard, he retained $3,881in equity, as compared to Joyce's $3,314 in equity. Accordingly, we find no abuse of discretion in the court's division concerning the Discover credit card.
{19} Richard finally contends that the trial court erred in valuing his 401K and Joyce's pension on different dates when the evidence supports that the values could have been calculated on the same date. Generally, a domestic relations court should use the same set of dates in valuing marital property.[12] However, in certain instances there may be an equitable reason for selecting a different date on which to value different marital assets.[13] In choosing a different valuation date for certain assets, the court must adequately explain its reasons for doing so.[14]
 {20} Despite the fact that the trial court valued Richard's 401K and Joyce's pension on different dates without explanation, this Court has previously determined that property divisions in divorce proceedings must be viewed in light of the entirety of the division.[15] "The mere fact that a property division is unequal, does not standing alone, amount to an abuse of discretion."[16] The difference in the amount of Joyce's pension between the date chosen by the court, December 31, 2001, and the date utilized to value Richard's 401K, March 31, 2001, was $232.39. As pointed out above, the difference between Joyce's entire allocation of marital assets and liabilities totaled $3,314, while Richard's totaled $3,881. Had the trial court assessed Joyce's pension on March 31, 2001, and attributed that amount to her assets, the outcome would still leave Richard with $334.61 more than Joyce's award. Consequently, based upon the totality of the award, we cannot find that the trial court abused its discretion.
{21} Therefore, Richard's first and second assignments of error are hereby overruled.
Assignment of Error III
{22} "The lower court abused its discretion in ordering Appellant to pay Appellee spousal support of $500.00 per month until Appellee attains the age of sixty-five (65) years, remarries, dies or cohabitates, including ordering Appellant to pay any spousal support arrearage accrued under the temporary orders of the Court."
{23} In his third assignment of error, Richard claims that the trial court abused its discretion in ordering him to pay spousal support and erred by not considering each statutory factor in R.C. 3105.18(C) in relation thereto. In addition, Richard contends that the trial court erred by not including the temporary orders for spousal support into the final divorce decree. Based upon the following, we must overrule his final assignment of error.
{24} Spousal support is defined in R.C. 3105.18 as "any payment or payments * * * that is both for sustenance and for support of the spouse or former spouse." Spousal support is awarded according to the obligee's need for support and the obligor's ability to pay.[17] Ohio law has established that a trial court retains broad discretion in fashioning an award of spousal support, thus we cannot reverse a trial court's determination in relation thereto unless it amounts to an abuse of discretion.[18]
 {25} The Ohio Revised Code requires a trial court to consider each of the factors listed in R.C. 3105.18(C)(1) when making a determination of whether spousal support is appropriate. Additionally, specific findings must be made by the trial court to enable a reviewing court to determine the reasonableness of its order to grant or deny a request for spousal support and that the relevant factors within R.C. 3105.18 were considered.[19] This court has held on numerous occasions that while the factors of R.C. 3105.18(C)(1) must be considered, "the failure of the trial court to specifically `enumerate' those factors does not constitute reversible error."[20] As long as the record reflects that the trial court considered the factors in R.C. 3105.18(C)(1), the award for spousal support will be upheld.[21]
 {26} Herein the trial court expressly considered and detailed twelve of the fourteen factors contained in R.C. 3105.18(C)(1). Following the trial court's express consideration of these factors, it cited to R.C.3105.18(C)(1). Accordingly, it is apparent that the trial court reviewed the statutory factors therein.[22] Further, the record does not show an abuse of discretion in awarding spousal support in this case. Joyce earns substantially less than Richard and has little opportunity to increase her earning ability. Furthermore, Richard has better ability to accrue retirement from his employer than does Joyce; his pension will vest in October 2003. Richard was also awarded the marital residence, an appreciating asset, and his son contributes $100 per month to assist with household expenses. Accordingly, we find no abuse of discretion in the trial court's spousal support award.
{27} Richard further argues that the trial court erred in including the court's temporary spousal support orders, for which he is currently in arrears, into the final decree. The Ohio Supreme Court has held that interim orders "should not be extended beyond the final decree unless specifically reduced to judgment or referred to within the decree."[23]
Herein, the trial court specifically ordered that the arrearages accumulated pursuant to the temporary orders would survive the divorce decree. This constitutes sufficient consideration by the trial court and specific enough reference within the final decree to provide for the continuation of the temporary order's effect and the enforcement of the arrearages arising there from.[24]
 {28} Finally, the award of an amount of temporary spousal support is a matter within the sound discretion of the trial court.[25] There was sufficient evidence in the record and Richard concedes that he was in arrears on the temporary support order. As such, the trial court did not abuse its discretion in including the arrearage from the temporary order in the final decree.
{29} For these reasons, Richard's third assignment of error is hereby overruled.
{30} Having found no error prejudicial to Appellant herein, in the particulars assigned and argued, the judgment of the trial court is affirmed.
 Judgment affirmed. BRYANT, P.J. and SHAW, J., concur.
[1] R.C. 3105.171(C), (D); Mason v. Mason (Dec. 5, 2001), Union App. No. 14-01-17, 2001-Ohio-2328.
[2] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 218.
[3] Kaechele v. Kaechele (1988), 35 Ohio St.3d 93, 94; Martin v.Martin (1985), 18 Ohio St.3d 292, 295.
[4] Kaechele, 35 Ohio St.3d at 94; Martin,18 Ohio St.3d at 294-95.
[5] Id.; Blakemore, 5 Ohio St.3d at 219.
[6] Mason v. Mason, supra, quoting Barkley v. Barkley (1997),119 Ohio App.3d 155, 159.
[7] Id.
[8] Id. See, also, In re Jane Doe I (1991), 57 Ohio St.3d 135.
[9] R.C. 3105.171(A)(6)(a)(ii).
[10] R.C. 3105.171(A)(3)(a)(i).
[11] Samples v. Samples (Oct. 4, 2002), Washington App. No. 02CA21,2002-Ohio-5441, at ¶ 22, citing DeLevie v. DeLevie (1993),86 Ohio App.3d 531, 537-38; Layne v. Layne (1992), 83 Ohio App.3d 559,568.
[12] Hyslop v. Hyslop (Sept. 6, 2002), Wood App. No. W.D. 01-059,2002-Ohio-4656, at ¶ 34, citing Keyser v. Keyser (Apr. 9, 2001), Butler App. No. CA2000-06-127; Dabis v. Dabis (July 9, 1998), Mercer App. No. 10-97-17, citing Linn v. Linn (Apr. 22, 1998), Seneca App. No. 13-97-48.
[13] Landry v. Landry (1995), 105 Ohio App.3d 289, 293.
[14] Hyslop, supra, at ¶ 36.
[15] Kimmey v. Kimmey (Oct. 31, 2001), Allen App. No. 1-01-68,2001-Ohio-2305, citing Rehfeldt v. Rehfeldt (Feb. 12, 1986), Hamilton App. No. C-850056, citing Briganti v. Briganti (1984), 9 Ohio St.3d 220,222. See, also, Holcomb v. Holcomb (1989), 44 Ohio St.3d 128, 132.
[16] Kimmey, supra, citing Cherry v. Cherry (1981), 66 Ohio St.2d 348, at paragraph two of the syllabus.
[17] Layne v. Layne (1992), 83 Ohio App.3d 559, 562-63.
[18] Lee v. Lee (Aug. 17, 2001), Shelby App. No. 17-01-05; Booth v.Booth (1989), 44 Ohio St.3d 142, 144.
[19] Lust v. Lust (July 17, 2002), Wyandot App. No. 16-02-04,2002-Ohio-3629, at ¶ 22.
[20] Lust, supra, at ¶ 22, citing Lee v. Lee, supra, citing Moorev. Moore (June 18, 1999), Van Wert App. No. 15-98-22.
[21] Lust, supra, at ¶ 22, citing Fisher v. Fisher (Mar. 22, 2002), Henry App. No. 7-01-12, 2002-Ohio-1297, at ¶ 56.
[22] Cf. Babka v. Babka (1992), 83 Ohio App.3d 428, 435; Calkins v.Calkins (May 20, 2002), Butler App. No. CA2001-05-126, at ¶ 52.
[23] Colom v. Colom (1979), 58 Ohio St.2d 245, 247. See, also,Webb v. Webb (Feb. 25, 1999), Marion App. No. 9-98-33.
[24] Jackman v. Jackman (June 16, 1986), Madison App. No. CA85-10-031, citing Colom, 58 Ohio St.2d, at 247.
[25] Cf. Id.; Fisher v. Fisher (Mar. 22, 2002), Henry App. No. 7-01-12, 2002-Ohio-1297.