DECISION AND JUDGMENT ENTRY
{¶ 1} This is a consolidated appeal from two judgments of the Lucas County Court of Common Pleas, Domestic Relations Division. In the first judgment, the trial court sentenced appellant, Rodney M. Ruetz, to 60 days in jail for contempt of court. In the second judgment, the trial court granted the parties a divorce, determined and distributed the marital assets, and awarded spousal support and attorney fees to appellee, Cynthia Ann Ruetz.
 {¶ 2} On appeal, Rodney Ruetz sets forth the following four assignments of error:
 {¶ 3} "Assignment of Error Number One
 {¶ 4} "The trial court abused its discretion and erred to the prejudice of appellant when it failed to allow contemnor the opportunity to purge himself of his contempt in its Mittimus.
 {¶ 5} "Assignment of Error Number Two
 {¶ 6} "The trial court abused its discretion and erred to the prejudice of appellant when it failed to award him his separate property in dividing and distributing the proceeds of the marital residence.
 {¶ 7} "Assignment of Error Number Three
 {¶ 8} "The awards of spousal support, temporary and definite, in favor of appellee were so grossly disproportionate to the totality of circumstances of this marriage that the spousal support awards constitute an abuse of the trial court's discretion.
 {¶ 9} "Assignment of Error Number Four
 {¶ 10} "The award of attorney fees, in addition to the awards for spousal support, in favor of appellee was so grossly disproportionate to the totality of circumstances of this marriage that the award of attorney fees constitutes an abuse of the trial court's discretion."
 {¶ 11} Rodney and Cynthia Ruetz were married on January 24, 1997. It was a third marriage for each of the parties. No children were born as issue of the marriage.
 {¶ 12} Rodney and Cynthia separated several times during the marriage. Their first separation occurred in February 1997, when Rodney left the parties' apartment. In May 1997, after the parties reconciled, they purchased a home at 5630 Pawnee in Toledo, Ohio, for approximately $72,000. The second separation occurred in February 1998, when Cynthia left the marital home to move into an apartment; however, she returned to the marital home six months later. The final separation occurred in October 2000, after the divorce action was filed.
 {¶ 13} Throughout the marriage, Cynthia worked as a waitress and also worked at various Family Dollar stores, as both a sales person and an assistant manager. Rodney was employed by Rudolph-Libbe as a construction worker at the time of the marriage; however, he became unemployed in October 1997, and began working as an independent drywall contractor.
 {¶ 14} The divorce complaint was filed on August 30, 2000. Court schedules filed by Cynthia indicated that, in 1999, Cynthia's income was $16,518, and Rodney's income was $66,826.
 {¶ 15} On November 1, 2000, the domestic relations magistrate ordered Rodney to pay Cynthia temporary spousal support in the amount of $750 per month. On March 6, 2001, Cynthia filed a motion to show cause as to why Rodney should not be held in contempt for failure to make temporary support payments. In support thereof, Cynthia alleged that "despite this Court's order that [Rodney] has refused and continues to refuse to pay the ordered spousal support * * *."
 {¶ 16} On March 27, 2001, Rodney filed a motion to modify the temporary spousal support, in which he argued that a modification was needed because both parties' incomes had changed "dramatically" since the temporary order was issued. In support thereof, Rodney attached to his motion a copy of his 2000 Federal Income Tax return, which showed an adjusted gross income of $59,727, which included $34,968 in business income, and a retirement account distribution of $27,000. The tax return also showed that Rodney owed $6,217 in delinquent income taxes.
 {¶ 17} A hearing was held on April 18, 2001, on both the show cause motion and Rodney's motion to modify support, at which testimony was presented by both parties. Cynthia testified that, as of the date of the hearing, Rodney had paid no temporary spousal support. Cynthia further testified that she was unable to meet her monthly expenses, in spite of the fact that she worked 32 hours a week as a waitress in Blissfield, Michigan, and 15-20 hours per week as a sales clerk at the Family Dollar store. Cynthia stated that she was unable to purchase prescription medication or life insurance due to her lack of funds, and she had an outstanding college loan that was in collection because she could not make the payments.
 {¶ 18} Rodney testified at the show cause hearing that his health is poor because he is "stressed out" by the divorce proceedings; however, he had not yet purchased prescribed medication. Rodney further testified that he was behind in his child support payments for his 17 year old son from a previous relationship, and he owed money for unpaid income taxes. Rodney stated that he sets his own working hours because he is self-employed, and admitted that he gambles "occasionally." He further stated that he refuses to pay temporary spousal support to Cynthia because he did not "feel obligated."
 {¶ 19} On April 20, 2001, the domestic relations magistrate found Rodney in contempt of court, and ordered him to pay Cynthia a lump sum judgment of $4,478.92 for spousal support arrears through March 30, 2001, to be paid through wage withholding at the rate of $100 per month. The magistrate also ordered Rodney to continue to pay Cynthia $750 per month as temporary spousal support, to reimburse her attorney fees in the amount of $712.50, and to post a $6,000 bond to guarantee the payment of future spousal support. A jail sentence was not imposed. Rodney filed objections to the magistrate's decision, which were denied by the trial court on May 22, 2001.
 {¶ 20} On May 29, 2001, Cynthia filed a second show cause motion, in which she stated that, in spite of the trial court's prior orders, Rodney still refused to pay temporary spousal support. Cynthia asked the court to find Rodney in contempt, order him to pay the past due support and her reasonable attorney fees, and to incarcerate Rodney "for a period no longer than sixty (60) days" as punishment for his contempt.
 {¶ 21} On June 8, 2001, the trial court denied Rodney's request for a modification of spousal support. On June 21, 2001, a hearing was held on both the second show cause motion and the remaining unresolved issues in the divorce action.
 {¶ 22} As to the show cause motion, Cynthia testified that, to date, Rodney had not paid any temporary support. Rodney testified that he did not pay the support because: "I feel it's prejudicial. I feel it's, uh, injustice to me on the whole * * * matter." Rodney further stated that he had no money to pay spousal support, because he owed back taxes to the IRS.
 {¶ 23} As to the remaining issues in the divorce action, Rodney testified that he withdrew $10,000 from his retirement account after the parties were married, from which he made a $4,890 down payment on the marital home, paid the remaining balance due on an automobile that Cynthia owned before the marriage, purchased appliances, and paid a portion of his back taxes. He further testified that, at the time of the marriage, he had $55,000 in his retirement account; however, at the time of the hearing, only $3,800 was left in the account. As to his income, Rodney testified that he earned $34,698, in 2000, based on the total of the checks deposited in his "business account." As to the value of the marital home, Rodney testified that, in his opinion, the house was worth $73,000.
 {¶ 24} Cynthia testified at the hearing that she hired a real estate appraiser who valued the marital home at between $95,000 and $98,000. She further testified that she suffers from arthritis, an anxiety disorder and headaches, for which she cannot afford prescription medication. Cynthia stated that, at the time of the hearing, she was sharing an apartment with her daughter and grandchild in Blissfield, Michigan. She further stated that her income was $16,000 in 1999 and $14,000 in 2000.
 {¶ 25} On August 16, 2002 the magistrate issued a decision. Based on the testimony presented, the magistrate found Rodney in contempt of court for non-payment of spousal support. The magistrate sentenced Rodney to 60 days in jail; however, the magistrate stated that Rodney could purge himself of the contempt by liquidating the remaining assets in his retirement account within 15 days, and placing the proceeds into an escrow account, to be disbursed by his attorney for the payment of his spousal support obligation. As to the issues raised in the divorce action, the magistrate found Cynthia's real estate appraisal to be more credible, and therefore the value of the marital home was between $95,000 and $98,000. The magistrate also found that, at the time of the marriage, Rodney's retirement account contained between $45,000 and $55,000, and that Rodney did not use that money to pay his back income taxes or to make improvements to the marital residence. The magistrate further found that, at the time of the hearing, Rodney owned a 1987 truck with no outstanding debt and a 1994 truck for which he owed $7,000, and Cynthia owned a 1989 Chrysler New Yorker on which she still made monthly payments in an unstated amount.
 {¶ 26} The magistrate noted that Rodney defines his personal income as those moneys dispersed to him by check from his business checking account, without taking into account any money paid directly from the business account for his personal expenses, such as his truck payment and sporadic child support payments for his son. The magistrate also found that the parties filed separate income tax forms for several years prior to the filing of the divorce action, and that Cynthia was entitled to receive an income tax refund of $514 in 1999; however, she did not receive the refund because it was applied to Rodney's outstanding tax liability.
 {¶ 27} The parties were granted a divorce on the basis of incompatibility. As to the division of marital assets, the magistrate awarded Cynthia the Chrysler New Yorker, and awarded Rodney the 1987 truck and the 1994 truck. The magistrate then ordered Rodney to pay his own outstanding tax liability, and ordered each party to pay his or her own personal debts, including any outstanding debt on their respective motor vehicles. The magistrate also awarded Cynthia certain personal property which the parties had agreed to divide. The parties were ordered to list the marital home for sale at the price suggested by Cynthia's appraiser and to split the proceeds, subject to certain conditions that are enumerated below, and ordered Rodney to pay the mortgage on the property until it was sold.
 {¶ 28} As to the issue of spousal support, the magistrate ordered Rodney to pay Cynthia $750 per month for a period of 10 months. The magistrate also awarded Cynthia lump sum judgments of $1,993.20 for spousal support from March 30, 2001 through the date of the divorce hearing, $4,478.92 for support arrearages from the first contempt judgment, $712.50 in attorney fees from the first contempt judgment, and $3,870.20 in additional attorney fees for the divorce proceedings. Rodney was ordered to pay the lump sum judgments out of his portion of the proceeds from the sale of the marital home. In addition, Rodney was ordered to place any remaining funds after the payment of the lump sum judgments into the escrow account, along with the liquidated proceeds from his retirement account, to be used to ensure payment of his 10 month spousal support obligation.
 {¶ 29} On August 16, 2001, the trial court adopted the magistrate's recommendations. On August 27, 2001, Rodney filed objections to the magistrate's decision and a motion for findings of fact and conclusions of law.
 {¶ 30} On October 18, 2001, the magistrate scheduled a hearing for November 16, 2001, to determine Rodney's compliance with the court's June 20, 2001 contempt order. A second hearing was scheduled at a later date, to determine Rodney's compliance with the court's August 16, 2001 contempt order. On November 16, 2001, the trial court found that Rodney had purged himself from contempt due to his noncompliance with the June 20, 2001 order, by paying a $250 fine. On November 26, 2001, Rodney filed amended objections to the magistrate's August 21, 2001 decision, which were overruled by the trial court on January 14, 2002.
 {¶ 31} On February 8, 2002, the trial court held the second hearing to determine whether Rodney was in compliance with the court's August 16, 2001 contempt order. At the hearing, Rodney told the court that he did not feel he should have to comply with the court's order to liquidate his retirement account and place the proceeds in escrow, because the asset was his before the parties were married. At the close of the hearing, the trial court found that Rodney had failed to purge himself of contempt. That same day, the trial court found that Rodney was in "civil contempt of court by reason of non-payment of support" and sentenced him to serve 60 days in the Lucas County jail, with no further purge provision. A timely notice of appeal was filed from both the February 8, 2002 judgment of contempt and the judgment of divorce, and the two cases were thereafter consolidated for purposes of this appeal.
 {¶ 32} Rodney asserts in his first assignment of error that the trial court erred when it sentenced him to serve 60 days in jail without allowing him the opportunity to purge himself of contempt.
 {¶ 33} A court has the inherent and statutory authority to punish a party for failure to comply with a prior court order. Dozer v. Dozer
(1993), 88 Ohio App.3d 296, 302. (Other citations omitted.) See also R.C. 2705.02. Contempt can be classified as either civil or criminal in nature. Generally, the failure to do something ordered by the court for the benefit of an opposing party in a civil action, such as the non-payment of support, is classified as civil contempt. See Beach v.Beach (1955), 99 Ohio App. 428, 431.
 {¶ 34} In cases of civil contempt, where the primary purpose of the punishment is remedial or coercive, the sanction must provide the contemnor with the opportunity to purge himself of his contempt. Tuckerv. Tucker (1983), 10 Ohio App.3d 251, 252. Nevertheless, a party who continually ignores a court's order until he is found in contempt, should not be allowed to purge himself "by doing no more than originally ordered, and by so doing divest the court of the power to punish his contempt." Morford v. Morford (1993), 85 Ohio App.3d 50, 55.
 {¶ 35} In this case, the trial court found that Rodney was in contempt for non-payment of spousal support on two separate occasions. The first time, Rodney was allowed to purge his contempt by paying a $250 fine. Upon finding him in contempt for the second time, the trial court stated that Rodney could purge his contempt, and thus avoid a 60 day jail sentence, by liquidating his retirement account and placing the proceeds in escrow to ensure the payment of spousal support to Cynthia. However, at the February 8, 2001 hearing, Rodney stated that he would not place funds in escrow for Cynthia's benefit because, in his opinion, the order was "an injustice." Thereafter, the court sentenced Rodney to serve 60 days in jail without further opportunity to purge himself of contempt.
 {¶ 36} Upon consideration of the foregoing, this court finds that the trial court gave Rodney ample opportunity to purge his contempt before imposing a 60 day jail sentence. Rodney's first assignment of error is not well-taken.
 {¶ 37} Rodney asserts in his second assignment of error that the trial court abused its discretion by not awarding him $4,890 of the value of the marital home as his separate, nonmarital property. Rodney further asserts that the trial court erred by finding the value of the marital home was between $95,000 and $98,000.
 {¶ 38} In dividing property in a divorce proceeding, R.C.3105.171(B) and (D) require the trial court to classify assets as marital or nonmarital and then award each spouse his or her own separate, nonmarital property. A trial court's factual finding as to the classification of property as separate or marital pursuant to R.C. 3105.171
will not be reversed on appeal unless it is against the manifest weight of the evidence. Okos v. Okos (2000), 137 Ohio App.3d 563, 570. In addition, regardless of the classification of property as separate or marital, the decision of the trial court in dividing such property will not be disturbed on appeal absent an abuse of discretion. Landry v.Landry (1995), 105 Ohio App.3d 289, 391, citing Martin v. Martin (1985),18 Ohio St.3d 292, 294. An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary or unconscionable. " Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 39} R.C. 3105.171(A)(6)(b) provides that "[t]he commingling of separate property with other property does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." However, the party who seeks to have property declared separate property has the burden of proof by a preponderance of the evidence. Okos, supra, citing Peck v. Peck (1994), 96 Ohio App.3d 731,734. Ohio courts have found that, in order to meet this burden, the party seeking to establish an asset as separate property must present at least some documentary evidence tracing the asset back to its nonmarital status. Peck, supra; Zeefe v. Zeefe (1998), 125 Ohio App.3d 600,614-615; Williams v. Williams (1996), 116 Ohio App.3d 320, 327.
 {¶ 40} It is undisputed that Rodney's retirement account was accumulated prior to the parties' marriage and that, at the time of the marriage, the account was valued between $45,000 and $55,000. It is further undisputed that, at the time of the divorce hearing, the account contained only $3,816. However, a review of the record reveals that a large portion of those withdrawn funds were used to supplement the parties' income and support their married lifestyle. Although Rodney testified that he used $4,890 of his retirement funds to make a down payment on the marital home, the record contains no receipts or other documents showing either the withdrawal of funds from Rodney's retirement account, or the use of funds from the account as a down payment. Similarly, the record contains no documentation that Rodney used any money from the retirement account to make improvements to the marital home.
 {¶ 41} As to the trial court's reliance on Cynthia's appraisal in valuing the marital home, we note that valuation of marital assets is typically a factual issue that is left to the discretion of the trial court. Hacker v. Hacker (1981), 5 Ohio App.3d 46, 47. The trial court was free to accept or reject either party's opinion as to the value of the marital home, so long as its decision is support by evidence in the record. See Murray v. Marina, Inc. v. Erie Cty. Bd. of Revision (1997),123 Ohio App.3d 166, 173.
 {¶ 42} As set forth above, Rodney testified that, in his opinion, the value of the marital home was approximately $73,000. In contrast, Cynthia introduced into evidence a written appraisal that valued the home between $95,000 and $98,000.
 {¶ 43} Upon consideration of the foregoing, this court finds that the trial court did not abuse its discretion, either by finding Cynthia's appraisal of the fair market value of the home to be the more credible of the two, and ordering the parties to list the home for sale in that price range, or by classifying the parties' home as a marital asset and refusing to award Rodney $4,890 of its value as his separate, nonmarital property. Rodney's second assignment of error is not well-taken.
 {¶ 44} Rodney asserts in his third assignment of error that the trial court abused its discretion by ordering him to pay $750 per month as spousal support while the divorce proceedings were pending, and $750 per month for 10 months, beginning on June 21, 2001, the date of the final hearing.
 {¶ 45} It is well-settled that a trial court has broad discretion in determining spousal support. Kunkle v. Kunkle (1990), 51 Ohio St.3d 64,67; Cherry v. Cherry (1981), 66 Ohio St.2d 348, 355. A reviewing court may not substitute its judgment for that of the trial court, absent a finding of an abuse of discretion. Kunkle, supra; Holcomb v. Holcomb
(1989), 44 Ohio St.3d 128, 131. As previously noted, an abuse of discretion is more than a mere error of law; "it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore, supra.
 {¶ 46} The primary purpose of a spousal support award is to provide for the financial needs of an ex-spouse. Moell v. Moell (1994),98 Ohio App.3d 748, 751. Pursuant to R.C. 3105.18(C), in determining the necessity for and amount of spousal support, the trial court must consider the fourteen factors provided therein, including, but not limited to: 1) the relative earning abilities of the parties, 2) the ages and physical, mental, and emotional conditions of the parties, 3) the retirement benefits of the parties, 4) the duration of the marriage, 5) the standard of living of the parties established during the marriage, 6) the relative education of the parties, 7) the relative assets and debts of the parties, including but not limited to any court-ordered payments by the parties, 8) the tax consequences for each party of an award of spousal support, or 9) any other factor that the court expressly finds to be relevant and equitable.
 {¶ 47} In the June 8, 2001 decision denying Rodney's motion to modify temporary support, the trial court reviewed the relative education, work history, medical history, and present living conditions of both parties. After stating the incomes of both parties, the court found that, without temporary support, Cynthia was unable to pay her monthly expenses, which included purchasing needed medication and paying off her outstanding college loan. The court further noted that Rodney had "poor" work habits, owed back taxes to the IRS, gambles "extensively," and stated that he did not "feel obligated" to pay Cynthia any support.
 {¶ 48} Similarly, before awarding Cynthia spousal support for 10 months following the parties' divorce, the trial court referenced the parties' education, medical history and work history as set forth in earlier proceedings, which had remained relatively unchanged. The court then found that, on her present income of $15,000 per year, Cynthia is still unable to purchase medicine, make college loan payments and pay her monthly bills, while Rodney reported income in 2000 of at least $34,968 from his self-employment. The court further noted that Cynthia "presently works as a cashier and waitress because these jobs are close to her home and she has unreliable transportation."
 {¶ 49} Upon consideration of the foregoing, we cannot say that the trial court abused its discretion when it ordered Rodney to pay Cynthia temporary support during the pendency of the divorce, and $750 per month for 10 months as spousal support following the divorce. Rodney's third assignment of error is not well-taken.
 {¶ 50} Rodney asserts in his fourth assignment of error that the trial court abused its discretion by ordering him to pay $3,382.70 for attorney fees, in addition to the $712.50 in attorney fees awarded to Cynthia as a result of the contempt proceedings.
 {¶ 51} Pursuant to R.C. 3105.18(H), the trial court may award reasonable attorney fees in a divorce proceeding if it:
 {¶ 52} "determines that the other party has the ability to pay the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall determine whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney's fees." Id.
 {¶ 53} In addition, the trial court's determination "should take into consideration * * * the earning abilities of the parties and the relative assets and liabilities of each." Birath v. Birath (1988),53 Ohio App.3d 31, 39. A decision to award or not award attorney fees lies within the sound discretion of the trial court. Rand v. Rand
(1985), 18 Ohio St.3d 356, 359; Parzynski v. Parzynski (1992),85 Ohio App.3d 423.
 {¶ 54} The record in this case contains ample evidence to demonstrate Rodney's history of contempt for the trial court's support orders, and the necessity of litigation in order to determine the amount of support and to force Rodney to comply with the trial court's orders. The reasonableness and the amount of Cynthia's $3,870.20 in additional attorney fees is undisputed. The court ordered Rodney to pay those fees, along with previous lump sum judgments of $712.50 for attorney fees from the contempt proceedings, $4,478.92 in unpaid temporary support, and $1,993.20 in unpaid support from March 31, 2001, until June 21, 2001, from his share of the proceeds from the sale of the marital residence. As set forth above, the record also contains evidence as to the disparity in the parties' incomes and earning abilities.
 {¶ 55} Upon consideration of the foregoing, we cannot say that the trial court abused its discretion by ordering Rodney to pay Cynthia's attorney fees in the amount of $3,382.70. Rodney's fourth assignment of error is not well-taken.
 {¶ 56} The judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, is hereby affirmed. Court costs of these proceedings are assessed to appellant, Rodney Ruetz.
 JUDGMENT AFFIRMED.
Richard W. Knepper, J., Mark L. Pietrykowski, J., and Arlene Singer, J., CONCUR.